Reed, P. J.,
delivered the opinion of the court.
This was an action of replevin, brought by appellant as plaintiff against appellee (defendant) to recover possession of certain chattels; complaint in the ordinary form. Defendant answered that he, acting as constable, did on the 20th day of September, 1893 (the date is probably a typographical error, as it is shown to have been September 28th), levy upon and take into his possession under and by virtue of a writ of attachment that day issued by F. D. Morse, as justice of the peace in the county aforesaid, in the suit of Stephen Comer against Levi C. Johnson, “a part of the goods in controversy.” Plaintiff claimed the goods as owner by virtue of a purchase made from Johnson. The plaintiff alleged in reply (1) that the defendant was not a constable authorized to make the levy; (2) that he was not a constable or specially deputized by an}'' valid indorsement or process to make the levy. The following is the docket entry of the justice of the peace in Comer v. Johnson:
“September 28th, 1893, comes plaintiff, and files affidavit and bond in attachment. Bond approved. Process issued, returnable October 3d, of 2 P. M., and delivered to S. T. Ferrier, special constable. Summons and writ returned. Same indorsed, 1 Served September 28, 1893, by leaving a copy of the within summons with Levi C. Johnson, the defendant herein.’ Writ indorsed, ‘Executed the within writ September 28, 1893.’ * * * October 3d, 2 p. m. Defendant not appearing within the hour, upon motion default was taken. Plaintiff made the proof, and the court, being fully advised in the premises, doth order that the attachment be sustained, and that plaintiff have and recover from the defendant the sum of $284.67, and the further sum of $12.30 costs accrued in this action, and that order of sale and execution thereof.
[Signed] “Flodo D. Morse, J. P.”
The evidence upon the trial of this case discloses an orig *268 inal and unique method of transacting business and adjudicating rights in the court of Morse, J. P. It appears that the justice has a clerk, selected by himself, paid by the county. It also appears that the defendant, Ferrier, kept a cigar stand in the vicinity, and that in the absence of the justice of the peace the clerk acted as substitute for the justice, and when the constable of the district was not at the court room the defendant was bis duplicate. The double system of administering justice may have its advantages in the way of promptness and celerity in dispatching the business, and may have been agreeable to the parties, but was hardly such a court as contemplated by statute, and might be subject to legal objections. It appears by the evidence, including that of the justice, that on September 28th — the day on which summons and attachment issued in Comer v. Johnson — and the following daj»- a county convention was being held, which was attended by both justice and constable as delegates, and the clerk and neighborly cigar vendor took the “shift, and the court was run by proxy.” It also appears from the evidence of the justice that he did not sign the approval of the bond, the summons, or writ of attachment and did not know in whose handwriting the signatures were. It also appears by the evidence of two witnesses who made copies of the papers on September 29th that on that date there was no indorsement upon either writ of attachment or summons of a special appointment of the defendant as constable. Such indorsements were subsequently made, but at what time is not shown. The fact is clearly established that at the time of the pretended service of the writ of attachment and summons the defendant had not been appointed a special constable to serve the writs, and that the pretended service was void, and his acts in taking possession of the property trespasses. Also that the judgment by default against Johnson was void for want of service upon and jurisdiction of the person. The statute in regard to the appointment of a special constable is as follows: “Any justice of the peace may appoint a suitable person to act as constable in a criminal or *269 other case, where there is a probability that a person charged with an indictable offense will escape, or that goods and chattels will be removed before application can be made to a qualified constable, or whenever no qualified constable can conveniently be found in the township; and the person so appointed shall act as constable in that particular case and no other; and any temporary appointment so made, as aforesaid, will be made by a written indorsement, under the seal of the justice deputing, on the back of the process which the person receiving the same shall be deputed to execute.” Mills’ Ann. Stats., sec. 2794. “The appointment by a justice of a person to act as constable must be in strict conformity with the statute, or the appointment is void, and the service of the process a nullity; anda defendant who justifies under an alleged appointment must affirmatively show that the causes authorizing the appointment existed, and that it was made in the manner prescribed by the statute.” Cort v. Newman, 6 Colo. App. 154. In Gordon v. Knapp, 1 Scam. 488, the statute requiring the justice to indorse the appointment upon the back of the writ was identical with ours.' The appointment was made by the justice on a separate paper. The court held it was not a compliance with the statute. Gordon v. Knapp, 1 Scam. 490. This case was tried to the court without a jury, the finding being as follows : “ From the evidence it appears that at the time the officer served the writ of attachment, and also served the summons in the ease of Comer v. Johnson, he had not been appointed in the manner required by statute; that is, his appointment was not made by the justice indorsing upon the process that be was to execute his appointment as special constable. It appears that the regular constable, and the justice also, were on that day in attendance upon a county political convention being held in the city. The justice’s office was left in the hands of his clerk, who signed the name of the justice to such processes as were issued, and placed them in the hands of defendant, Ferrier, who had a cigar store, and was alwaj^s about the place to serve papers in the absence of *270 the regular constable. The justice, in making up his docket and in filling out the files, made it appear that this person was regularly appointed a special constable to execute and serve the writ of attachment, and also the summons. By virtue of section 2787, Mills’ Ann. Stats., the legislature of this state has made justices’ courts courts of record. In such cases the court is bound by the record made up by the justice. While, under the circumstances of the case, I find, as a matter of fact, that this officer was not appointed, and was not authorized to execute the writ of attachment or serve the summons, the justice’s record on this subject is conclusive in this action. If he had made a false entry, he is liable in a civil action to the parties in damages; but the court must give full faith and credit to his record, which shows that the officer was regularly appointed.” The court very properly found the docket entries false and fraudulent; that the defendant was not appointed, and was not authorized to execute the writ of attachment or serve the summons; yet that, by reason of the fraud and false entries, the acts of the defendant and the court were legalized, and the plaintiff divested of his property, as the court was a court of record; and that its record could not be impeached by oral evidence. If such is the law, legislation is speedily needed to protect defendant and rights of property.
The only question presented for our determination is whether the court erred in regard to the law of the case in lidding the justice’s court to be a court of record, and his docket, shown to be a lie, of such absolute verity as to enable a party to confiscate the property of another under a claim of judicial proceedings. The learned judge said: “By virtue of section 2787, Mills’ Ann. Stats., the legislature of this state has made justices’ courts courts of record.” We do not so understand the effect of the section, nor that intention of the legislature. There is nothing in it to extend the powers of the court or give it a greater dignity than it possessed before. The word “ record ” may have been unfortunately used instead of “ docket,” but it is evident that it means *271 the docket. Nearly all the statutes concerning justices’ courts provide for and require a docket book to be kept, and many of them, like the section in question, prescribe what it shall contain, and how be kept. This, we conceive, was all that was intended by the section. If it was not a court of record previously, it could not be made so by inference from the inadvertent use of a word; it could only be done by direct, affirmative legislation. The cases of Garfield v. Douglass, 22 Ill. 100, and Wiley v. Sutherland, 41 Ill. 25, do not establish the assertion that justices’ courts are courts of record. They do hold that parol evidence is inadmissible to contradict a docket entry. The second case is based upon the first, which is very brief, and assumes that a justice’s docket is a record. We cannot so regard it. While it may be technically a record of that court, it is not what is known in law as the record of a court, which can only be of a superior court having a seal, and the necessary incidents of a court of record. In 1 Bouv. Law Dict., tit. “Court of Record,” I find the following: “ The mere fact that a permanent record is kept does not, in modern law, stamp the character of the court; since many courts, as probate courts, and others of limited or special jurisdiction, are obliged to keep records, and yet are held to be courts not of record.” See Smith v. Rice, 11 Mass. 507; Smith v. Morrison, 22 Pick. 430; Gladhill, Petitioner, 8 Metc. (Mass.) 168; Scott v. Rushman, 1 Cow. 212; Thomas v. Robinson, 3 Wend. 268, and cases cited; Snyder v. Wise, 10 Pa. St. 157; Ellis v. White, 25 Ala. 540. I cannot find that the question here presented has been decided in a5court of last resort in this state. The great weight of authority being to the contrary, I am not prepared to adopt the decisions cited from the state of Illinois, but must hold that justices’ courts are not courts of record, but inferior courts, and that the dockets do not import absolute verity, but prima facie evidence of the facts stated, and, when not consonant with the facts, may be impeached by oral testimony. Wight v. Warner, 1 Doug. (Mich.) 384; Clark v. Holmes, 1 Doug. (Mich.) 390; Wilson v. Shipman, *272 (Neb.) 52 N. W. Rep. 577; Cort v. Newman, supra; Iron Co. v. Blair, 6 Colo. App. 40. With sucli examples as this before us, such holding seems absolutely necessary, and to be demanded by public policjí-, to protect parties against fraudulent practices under the claim of legal procedure; under the ruling, the entire docket might be false, fraudulent, and forged, and import absolute verity. The docket was false and properly impeached, there was no service of either writ of attachment or summons, there was neither jurisdiction of the person of the defendant or the property, and the judgment entered was void. The judgment of the district court will be reversed and cause remanded.

Beversed.